CALL et al., Respondents, *v.* HASTINGS, Appellant.

The evident intention of the statute providing for the proof and registration of conveyances, is to protect subsequent purchasers, without notice, either actual or constructive.

At common law, negligence in a prior purchaser or mortgagee, such as leads to imposition upon an innocent party, is regarded as a legal fraud.

The doctrine of constructive notice has always been regarded as a harsh necessity; and the statutes which create it have always been subjected to the most rigid construction.

A mortgage made anterior to the passage of the act concerning conveyances, was not recorded in accordance with the provisions of the 41st section of the said act.   Held, that it lost its priority as against a subsequent purchaser without notice.

APPEAL from the Sixth Judicial District, Sacramento County.

This action was brought to recover the possession of the real estate in the complaint described, in the possession of the defendant.

Both parties claimed title under Gideon B. Stephens.

The plaintiffs claimed by sheriff's deed, dated the 14th December, 1850, of the property in dispute.

Stephens had executed, on the 19th February, 1850, to one John Eddy, a mortgage of the premises, which mortgage was first in date, and which plaintiffs averred was the first incumbrance at the time of the sale.   It was acknowledged before J. A. Thomas, Judge of Sacramento District.

J. Birdsell, the Recorder of Sacramento, was produced by

plaintiffs as a witness, who testified that he had the record of the mortgage from Stephens to Eddy, of February 10th, 1850; that this record was one turned over to witness by the Clerk of the County as part of the records of the county,—not a record made by witness, but a book recording conveyances, previous to the passage of the state laws regulating conveyances. Witness had charge of all the records of the County, and these books A and B, and part of C and D (the books produced), were made before he went into the office, and were used by him as records. They were kept by the predecessor of witness, Mr. Schoolcraft, and in tracing titles, were always included in the search; that Schoolcraft was the *acting* Recorder of the County at the time he went into office.

Upon the above mortgage Eddy obtained judgment against Stephens, 2d November, 1850, and the property embraced by it was sold by the sheriff as above stated, and bought by the plaintiffs, to whom the sheriff conveyed 15th December, 1850; deed acknowledged the same day, and recorded January 8th, 1851.

The defendant denies in his answer that the plaintiffs had purchased any interest in the premises by the said sheriff's sale of 15th December, 1850, and denies that Stephens had any interest in the property at the time of sale, and sets up that he, the defendant, claims under a decree of a foreclosure of another mortgage from Stephens, about the 23d July, 1850, which he avers was the first mortgage legally executed and recorded in the said County; and that the mortgagee of the last mortgage had no notice of the existence of any prior mortgage outstanding. Defendant further admits his possession of the property, and insists upon his right to it as against the plaintiffs, &c.

The mortgage under which defendant claims, was a second mortgage, executed by Stephens to one Maynard, recorded 21st May, 1850, of the same property previously mortgaged to Eddy.

The question in the case was, whether the record of the first mortgage protected the mortgagee against the subsequent mortgage creditor.

The appeal was taken by plaintiffs from a judgment entered for defendant, without prejudice, by agreement of parties.

*Robinson,* for appellant.

The mortgage of February, 1850, was duly recorded in the office of H. A. Schoolcraft, then acting as recorder of deeds and mortgages, &c., in the jurisdiction of Sacramento, to which office he had been elected at a popular election in 1849.

In May, 1850, Stephens mortgaged the property again, and this mortgage (to Maywood) was duly recorded under the recent recording act; and under a judgment, foreclosure, and sale, upon this mortgage, defendant is in possession, and holds.

The recording of the mortgage in the office of Schoolcraft was direct constructive notice of the incumbrance, he being *de facto* in the exercise of the functions of the office of recorder.

If such office of recorder existed under Mexican law, Schoolcraft being *de facto* the recorder, his acts have the same validity as if he was in the rightful exercise of the office.

If there was no such office known to the Mexican law, then the first mortgage in point of time has the better equity.

Apart from this consideration, our own statutes give validity to the records of mortgages recorded in the Schoolcraft records. Acts of April 13 and 16, 1850, and of March 2, 1850, chap. 100, §42, p. 253; ch. 23, §39, p. 81; ch. 93, §1, 2, p. 218.

*Hastings,* for respondents.

Schoolcraft's books were not records; they were not kept by an alcalde, notary, or any other officer. An office book must be authorized by a law of some state; 2 Bow. Dec. 203, 209. The office of recorder of Sacramento City did not exist by any statute, or by the civil or common law. The plaintiffs therefore failed in their action.

The mortgage was void according to Mexican civil law; and was a mere personal contract and a private act. A *conventional* mortgage must be executed by an act, in writing, before a notary public; Smidt's Civil Law of Spain, 181. The statute requires compliance with the law at the time in force; stat. 1851, p. 253, §42.

Plaintiffs' mortgage was void for want of registry. Registry laws have been established in all civil law countries, for the inscription and publication of mortgages. And they universally

establish an "office of mortgages;" and without registration they are void against all third persons.   See M'Kelery, 368.

These offices were established in the Mexican Republic, and were to be kept by the *Escribanos* of Districts, or by some of the judiciary.   See How's Translation (A).   Schoolcraft comes within no requisition of the law.

"Whenever the age of the mortgages is proved by the documents, he who proves by a public or a *quasi* public document has the preference over every mortgagee whose means of proof is only a private instrument, although it be of older date." Mauldy, Civil Law, 391.

The recording of defendant's mortgage was a public act, within the rule cited.

Plaintiffs permitted the defendant's mortgage to be recorded, foreclosed, and the premises sold by the sheriff, more than half a year, and have lost their priority by negligence.   See Mauldy Civil Law, 392, note, and authorities cited.

Why did not plaintiffs record their deed in the legal office? This is required in all cases as respects third persons.   See stat. concerning Conveyances, 1850, sec. 24, 241.   All conveyances executed according to former law to be recorded.   Ib.

Neither can the plaintiffs recover at common law, in the absence of laws of registration; in that case their duty was to take possession of the land or the title papers: 2 Pow. on Mortgages, 451, note; Roberts on Fraud, 550 : 1 T. Rep. 762.

A registration not in strict compliance with law, is a nullity; 1 Sto. Eq. Jur., sec. 404 ; 1 M'Lean Rep. 527.

Stephens had no right at the date of the levy; the plaintiffs therefore purchased nothing.

HEYDENFELDT, Justice, delivered the opinion of the court. WELLS, Justice, concurred.

It is unnecessary to decide whether the mortgage under which the plaintiffs claim, was valid under the Mexican municipal laws which prevailed at the time it was made.   Its validity may be conceded, and if so, it not only was unaffected, but was specifically protected by the act concerning conveyances, passed April 16, 1850.

That act, however, introduced a new rule for the government of these contracts, not as affecting their validity, but in respect to their relation to the rights of other parties which might afterwards grow up.

The act referred to, after providing for the proof and registration of conveyances, declares, " Every such conveyance, certified and recorded in the manner prescribed in this act, shall from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof, and all subsequent purchasers and mortgagees shall be deemed to purchase with notice."

The evident intention of the statute seems to be to protect subsequent purchasers without notice, actual or constructive. And such is the rule at common law, where registration is not notice, whenever the prior purchaser or mortgagee is guilty of such negligence as leads to imposition upon an innocent party, for in such cases the negligence is regarded as a legal fraud.

In this case it appears that the plaintiffs took none of the precautions which would have answered to put the defendant on his guard.   He left the mortgagor in actual possession of the mortgaged premises, and of the title deeds to the property, allowed the law day of the mortgage to pass for nearly a year without taking action, although the time of credit specified by the mortgage was for less than ten days, and although the terms of the mortgage provided to the mortgagee a power of absolute sale in default of payment.   The mortgage under which the defendant claims, was made after the law day of the first mortgage had gone by.

A mere recital of these facts conclusively determines, that the plaintiffs' claim must yield to the defendant's, unless he is protected by the doctrine of constructive notice.   This doctrine has always been regarded as a harsh necessity, and the statutes which create it have been always subjected to the most rigid construction.

I have shown that the act concerning conveyances protected the first mortgage as far as its validity was concerned, but that protection did not make it notice to those who might become purchasers subsequent to the passage of the law.   On the con-

trary, the act in positive terms required that it should be recorded according to the provisions of the act.    The 41st section declares, " all conveyances of real estate heretofore made and acknowledged, or proved according to the laws in force at the time of such making and acknowledgment or proof, shall have the same force as evidence, and be recorded in the same manner and with the like effect as conveyances executed and acknowledged in pursuance of this act."

By the 30th section, the term "conveyance," as used in the act, is made to embrace mortgages.

It is clear that the object of the 41st section was to produce a strict conformity in the registration of all deeds affecting real property within this State, and doubtless the main and strong reason for it was, in a condition of things new to the great body of the people, to afford the utmost facilities for research and information, and thus to diminish the frequency of the application of the doctrines of implied notice.

The conformity demanded is as easy as it could be made. The new forms of acknowledgment on proof of execution are dispensed with.    Nothing was required but the simple registration, and that is imperative.    Without this, the first mortgage, although valid and legally executed under the Mexican civil law, under the new act imparted no notice to the subsequent purchaser ; and although not in express terms declared to be void as to such subsequent purchaser, yet it is so, not only by the intent of the law, but by the laches, amounting to legal fraud, of the mortgagee.

The judgment is affirmed, with costs.