## CHAMBERLAIN *v.* BELL.

Where the defendant bought the property in question and recorded his deed, but by mistake the number and description of the lots were omitted in the record, and plaintiff subsequently bought the same lots of the same grantor, and afterwards the common grantor of both procured the record of defendant's deed to be amended by interlineation of the description : *Held,* that the plaintiff had no notice of the previous conveyance of the property to defendant.

The interlineation could only impart notice from the time it was made.

The design and intention of the Registration Act, was to give constructive notice of the facts which appeared upon the face of the record.

This act must be strictly construed.

APPEAL from the District Court of the Sixth Judicial District.

This is an action to quiet title to land. Both parties claim under deeds derived from one Roland Gelston.

It appears from the record, that in April, 1852, one Clough, attorney of Gelston, sold a number of lots, including those in controversy, to Reynolds, defendant's grantor. The deed was recorded in the proper office, but in the record the number and description of these lots were, by mistake, omitted. Afterwards Clough sold the lots to John S. Fowler, under whom the plaintiff claims. Subsequent to the record of Fowler's deed, Clough procured the record to be amended by interlining the number and description of the omitted lots. The plaintiff purchased in good faith without actual notice of defendant's title; and he en-

tered into possession of the property, and continued to occupy it, at the commencement of this action.

The Court below rendered a decree in favor of plaintiff Chamberlain, ordering defendant's deed from Gelston to be canceled, and perpetually restraining him from setting up title to the premises.

Defendant moved for a new trial, which being denied, he appealed.

*Joseph W. Winans* for Appellant.

The conveyance to Reynolds was recorded in the county recorder's office, as provided in section twenty-four of the "act concerning conveyances," etc.

By such recording, under section twenty-five of said act, it "legally imparted notice of the contents thereof," *i. e.* of the contents of the conveyance—not of the record.

If the recorder committed a clerical error in the recording of the deed, by leaving out a part of the estate conveyed thereby, that error does not make the conveyance any less a recorded conveyance. The act only requires that it shall be recorded to impart notice. It was recorded, even if incorrectly recorded.

Again, the correction having been made in the record of the conveyance, becomes a part of the record, and applies and relates back to the time of the original recording of the conveyance. The correction cannot be considered as a separate record; it is a part, and an inseparable part, of the record of the whole instrument, and of that record as a whole. That record is but a unit, indivisible, and in its character of unit, embraces all its parts. McGregor *v.* Hall, 3 Stewart & Porter, 405; Bank of Kentucky *v.* Hoggin, 1 A. K. Marshall, 308; Franklin *v.* Cameran, 1 Root, 500; Hartmeyer *v.* Gates, 1 Root, 61, 81; Nye *v.* Maxwell, 14 Vermont, 14; Holt *v.* Calleray, 7 B. Monroe, 179; 1 Harris & Johnson, 167.

*Crocker & Robinson* for Respondent.

The recorder had no power or authority to make the alteration, after the deed had been recorded. It was the duty of the grantee, when he discovered the omission, to have his deed re-recorded; and then, so far as this block is concerned, it would be notice from the latter date, which would be officially certified to, by the recorder or auditor.

Where there is a mistake in the recording of an instrument, a subsequent *bona fide* purchaser is bound only to the extent set forth in the record. Frost *v.* Beckman, 1 John. C. R., 288, 299.

In Price *v.* Webb, 2 Brown Ch. R., 15, note, a forged deed was ordered to be canceled, though the forgery was provable at common law; and the books are full of similar cases, where the facts which rendered the instrument liable to cancellation were

triable in an action at law, but complete relief could only be given in equity.

TERRY, J., after stating the facts, as above, delivered the opinion of the Court—MURRAY, C. J., concurring.

The evident design of the Registration Act was, by establishing a notice equally accessible to all, to protect subsequent *bona fide* purchasers. The doctrine of constructive notice, under registration laws, has always been regarded as a harsh necessity, and the statutes which create it have always been subjected to the most rigid construction." Call *v.* Hastings, 3 Cal., 179. So far as the lots in controversy are affected, the deed of Reynolds was not recorded, until the title of plaintiff's grantor was perfected; and, conceding the propriety of the interlineation, it could only impart notice from the time it was made, and could in no way impair or defeat a title previously acquired. Our statute provides that "Every conveyance, certified and recorded in the manner prescribed in this act, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof." See § 25, p. 251.

We think the design and intention of this act was to give constructive notice of the facts which appeared upon the face of the record, and that it could not operate as notice of such portions of the deed as, through mistake or carelessness, are not entered of record.

In this view, we are sustained by decisions of various States. In Frost *v.* Beckman, 1 John. Ch. R., a mortgage for three thousand dollars, which by mistake was recorded as a mortgage for three hundred dollars, was held valid, as against a subsequent purchaser, only for three hundred dollars. So, in Sawyer *v.* Craige, 10 Vt. R., 555, a deed for the east half of a certain lot was erroneously recorded as a deed to the west half. It was held invalid, as against a subsequent *bona fide* purchaser of the east half. See also 20 Ohio R., 266.

Judgment affirmed, with costs.